UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| COMMONWEALTH OF MASSACHUSETTS, | ) |
| | ) CIVIL ACTION NO. |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF GLOUCESTER, MASSACHUSETTS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**CONSENT DECREE**

TABLE OF CONTENTS

I.  STATEMENT OF CLAIM ................................................................................................ 6
II.  JURISDICTION AND VENUE ...................................................................................... 6
III.  APPLICABILITY ............................................................................................................. 7
IV.  DEFINITIONS ................................................................................................................. 8
V.  OBJECTIVES ................................................................................................................... 11
VII.  REMEDIAL MEASURES ............................................................................................ 12
VIII.  REPORTS ON COMPLIANCE .................................................................................. 13
IX.  APPROVAL OF SUBMISSIONS ................................................................................. 14
X.  STIPULATED PENALTIES .......................................................................................... 16
XI.  FORCE MAJEURE ........................................................................................................ 20
XII.  DISPUTE RESOLUTION ........................................................................................... 22
XIII.  RIGHT OF ENTRY/INFORMATION COLLECTION AND RETENTION ........ 26
XIV.  FORM OF NOTICE .................................................................................................... 28
XV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................. 31
XVI.  COSTS .......................................................................................................................... 33
XVII.  EFFECTIVE DATE .................................................................................................... 33
XVIII.  RETENTION OF JURISDICTION ........................................................................ 33
XIX.  MODIFICATION ......................................................................................................... 34
XX.  FUNDING .................................................................................................................... 34
XXI.  SEVERABILITY ......................................................................................................... 35
XXII.  TERMINATION ........................................................................................................ 35
XXIII.  FINAL JUDGMENT ................................................................................................ 36
XXIV.  WAIVER OF SERVICE OF SUMMONS AND COMPLAINT ........................... 36
XXV.  PUBLIC COMMENT ................................................................................................ 36
XXVI.  SIGNATORIES ......................................................................................................... 37
XXVII.  INTEGRATION ....................................................................................................... 37
XXVIII.  APPENDICES ........................................................................................................ 37

WHEREAS, the United States, the Commonwealth of Massachusetts (the "Commonwealth"), and the City of Gloucester, Massachusetts (the "City" or "Gloucester") (collectively, the "Parties"), previously entered into a Consent Decree (1:89-cv-02206-WGY) to resolve violations of the Clean Water Act ("CWA") ("Act" or "CWA") related primarily to elimination of Combined Sewer Overflows from the City's Collection System, and the City having fulfilled its obligations under the Consent Decree, such Consent Decree was Terminated on March 15, 2021;

WHEREAS, the United States, on behalf of the U.S. Environmental Protection Agency ("EPA"), and the Commonwealth, on behalf of the Massachusetts Department of Environmental Protection ("MassDEP"), allege that the City discharges pollutants into navigable waters of the United States from the Gloucester Water Pollution Control Facility ("WPCF"), a publicly owned treatment works ("POTW") located at 50 Essex Ave., Gloucester, Massachusetts, pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. MA0100625, which was reissued most recently on June 30, 2022 (the "Permit");

WHEREAS, as required by 33 U.S.C. § 1311(b)(1)(B), POTWs typically must satisfy permit requirements based on secondary treatment, that is technology-based treatment required for direct discharging municipal sewage facilities;

WHEREAS, POTWs may instead obtain modified permit conditions based on primary treatment, that is treatment consisting of removing some portion of the suspended solids and organic matter in wastewater through sedimentation, under a modification of secondary

treatment requirements if granted by the permitting authority under Section 301(h) of the CWA, 33 U.S.C. § 1311(h);

WHEREAS, the EPA is the NPDES permit issuing authority for point source dischargers of pollutants to navigable waters in Massachusetts, such as the City;

WHEREAS, the City has on multiple occasions applied to EPA for a modification from Secondary treatment requirements under Section 301(h) of the Act ("a 301(h) modification"), 33 U.S.C. § 1311(h);

WHEREAS, EPA issued NPDES Permit No. MA0100625 ("the Permit") with effluent limits based on Primary treatment under a 301(h) modification on June 26, 1985, which EPA thereafter reissued with limits based on a 301(h) modification on August 28, 2001, which became effective on October 27, 2001, and expired on October 27, 2006;

WHEREAS, the City applied for renewal of its Permit and 301(h) modification on May 26, 2006, which was administratively continued under 40 C.F.R. §122.6;

WHEREAS, the City applied to EPA in 2006 for renewal of its 301(h) modification and on November 5, 2010, EPA issued a Tentative Denial of that application under 40 C.F.R. § 125.59(h), together with a Draft NPDES Permit with limits based on Secondary treatment. EPA provided public notice of, and accepted public comment responding to, both the Tentative Denial and the Draft Permit;

WHEREAS, on June 30, 2022, EPA issued both a Final Denial of the City's 301(h) modification application as well as the City's Final NPDES Permit ("Final Permit"), which included effluent limits based on Secondary treatment. *See* 33 U.S.C. § 1311(b)(1)(B); 40 C.F.R. Part 133. The Final Permit was effective as of September 1, 2022;

WHEREAS, during the period from the City's application for a renewal of its 301(h) modification until the 2022 Final Permit became effective on September 1, 2022, the 301(h) modification was still in effect;

WHEREAS, the Final Permit authorizes the City to discharge pollutants from Outfall 001 subject to the effluent limitations, monitoring requirements, and other conditions specified in the NPDES Permit, such as, among other requirements, limits for biological oxygen demand ("BOD"), BOD % removal, total suspended solids ("TSS"), TSS % removal, whole effluent toxicity ("WET"), oil and grease, total petroleum hydrocarbons ("TPH"), fecal coliform, and enterococci bacteria;

WHEREAS, information provided by the City demonstrates that, as currently configured, the POTW's discharge is unable to meet BOD, TSS, WET, oil and grease, TPH, or bacteria limits set by the Final Permit until such time as WPCF upgrades are completed;

WHEREAS, the City indicates that it wants to, and intends to, take the steps needed to design, install and operate those upgrades;

WHEREAS, on October 31, 2022, the City submitted a Water Pollution Control Facility: Facility Assessment and Improvements draft report that includes a description of and schedule for secondary treatment upgrades required to maintain compliance with the 2022 Final Permit;

WHEREAS, the plaintiff United States of America has filed a complaint simultaneously with this Consent Decree alleging that the City has violated the Permit and Section 301(a) of the Clean Water Act ("Act" or "CWA"), 33 U.S.C. § 1311(a);

WHEREAS, the Commonwealth, on behalf of MassDEP, has filed an assented-to motion to intervene as a plaintiff in the action brought by the United States and has filed a complaint that

5

alleges that the City was, and is, in ongoing violation of the Massachusetts Clean Waters Act, M.G.L. c. 21 §§ 26 to 53 ("Massachusetts Act"), and provisions of the Permit and State Permit No. MA0100625, issued by the MassDEP under the Massachusetts Act (said Federal and State permits having been jointly issued as a single permit);

WHEREAS, entry of this Consent Decree by the Court will resolve all claims in the complaints of the United States and the Commonwealth, referred to herein collectively as the "Complaints"; and

WHEREAS, the Parties, agree, without admission of facts or law except as expressly stated herein, that settlement of this matter is in the public interest and that entry of this Consent Decree without further litigation is an appropriate resolution of the dispute, and the Parties consent to the entry of this Consent Decree.

NOW, THEREFORE, it is hereby ordered, adjudged, and decreed as follows:

## I.  STATEMENT OF CLAIM

1.      The Complaints state claims upon which relief can be granted against the Defendant pursuant to Section 309 of the CWA, 33 U.S.C. § 1319, and pursuant to the Massachusetts Act, M.G.L. c. 21, §§ 43 and 46.

## II.  JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, 1355, and 1367 (supplemental jurisdiction over related state claims). This Court has personal jurisdiction over the Parties to this Consent Decree. Venue properly lies in this district pursuant to Section 309(b)

of the CWA, 33 U.S.C. § 1319(b), 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1395(a). The City waives all objections it might have raised to such jurisdiction or venue.

### III.  APPLICABILITY

3.     The provisions of this Consent Decree shall apply to and be binding upon the City and its officers, directors, agents, successors, and assigns, and City employees acting in their official capacities.

4.     No transfer of any ownership interest in or any interest in the operation of the WPCF, whether in compliance with this Paragraph or otherwise, shall relieve the City of its obligation to ensure that the terms of this Consent Decree are implemented. Any transfer involving ownership or operation of the WPCF, or any portion thereof, to any other person or entity must be conditioned upon the transferee's agreement to undertake the obligations required by all provisions of this Consent Decree, as provided in a written agreement between the City and the proposed transferee, enforceable by the United States and the Commonwealth as third-party beneficiaries of such agreement. At least 30 days prior to such transfer, the City shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the above-referenced proposed written agreement, to EPA, the United States Attorney for the District of Massachusetts, the United States Department of Justice, and MassDEP, in accordance with Section XIV (Form of Notice). Any noncompliance with this Paragraph constitutes a violation of this Consent Decree.

5.     The City shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provisions of this

Consent Decree. The City shall also provide a copy of this Consent Decree to all contractors and consultants (including engineering firms) retained to perform any obligation required by this Consent Decree on behalf of the City, and condition any such contract upon performance of the work in conformity with the terms of this Consent Decree. The City shall require that such contractors and consultants provide a copy of this Consent Decree to their subcontractors to the extent the subcontractors are performing work subject to this Consent Decree. Such contractors, consultants and subcontractors shall be deemed agents of the City for the purposes of this Consent Decree. In an action to enforce this Consent Decree, the City shall not assert as a defense against an action by EPA the failure by any of its officers, directors, employees, agents, servants, consultants, contractors, subcontractors, successors, and assigns to take actions necessary to comply with this Consent Decree.

IV.  DEFINITIONS

6.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the CWA or in regulations promulgated under the CWA shall have the meaning ascribed to them in the CWA or in the regulations promulgated thereunder. Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply.

a.      "Act" or "CWA" shall mean the Federal Water Pollution Control Act (commonly referred to as the Clean Water Act), as amended, 33 U.S.C. §§ 1251-1387.

b.      "Approval by EPA" or "Approved by EPA" shall mean the issuance of a written approval document from EPA,  approving, approving upon specified conditions, approving part of, or correcting a deficiency of a submission in accordance with Section IX (Approval of Submissions).

c.      "Approval by MassDEP" or "Approved by MassDEP" shall mean the issuance of a written approval document from MassDEP, approving, approving upon specified conditions, approving part of, or correcting a deficiency of a submission in accordance with Section IX (Approval of Submissions).

d.      "Best Management Practices" or "BMPs" shall mean schedules of activities, practices and prohibition of practices, related to structures, vegetation, maintenance procedures, operation, and other management practices to prevent or reduce the discharge of pollutants to waters of the United States. BMPs also include treatment requirements, operating procedures, and practices to control site and road runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

e.      "Collection System" shall mean the wastewater collection, storage and transmission system (sanitary sewer system) owned or operated by the City, including, but not limited to, all devices, pump stations, force mains, gravity sewer lines, manholes, and appurtenances.

f.      "Commonwealth" shall mean the Commonwealth of Massachusetts.

g.      "Complaints" shall mean the complaint filed by the United States and the Commonwealth in this action.

h.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Decree and any appendix, this Decree shall control.

i.      "Date of Lodging" shall mean the Day this Consent Decree is filed for

lodging with the Clerk of the Court for the United States District Court for the District of

Massachusetts.

j.      "Day(s)" or "day(s)" shall mean a calendar day.  In computing any period

of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or

federal or Commonwealth holiday, the period shall run until the close of business of the next

business day.

k.      "Effective Date" shall have the definition provided in Section XVII

(Effective Date).

l.      "EPA" shall mean the United States Environmental Protection Agency

and any successor departments or agencies of the United States.

m.      "Flow" shall mean all wastewaters conveyed by any portion of the

Collection System.

n.      "MassDEP" shall mean the Massachusetts Department of Environmental

Protection and any successor departments or agencies of the Commonwealth.

o.      "Paragraph" shall mean a portion of this Consent Decree identified by an

Arabic numeral, a lower case letter, or a lower case Roman numeral.

p.      "Parties" shall mean the United States, the Commonwealth, and the City

of Gloucester, Massachusetts.

q.      "Primary treatment" shall mean the practice of removing some portion of

the suspended solids and organic matter in a wastewater through sedimentation. Common usage

of this term also includes preliminary treatment to remove wastewater constituents that may

cause maintenance or operational problems in the system (i.e., grit removal, screening for rags and debris, oil and grease removal, etc.).

r.      "Secondary treatment" shall mean technology-based requirements for direct discharging municipal sewage treatment facilities. The standard is based on a combination of physical and biological processes typical for the treatment of pollutants in municipal sewage. Standards are expressed as a minimum level of effluent quality in terms of: BODs, TSS, and pH (except as provided for special considerations and treatment equivalent to secondary treatment).

s.      "Section" shall mean a portion of this Consent Decree identified by an uppercase Roman numeral.

t.      "United States" and "U.S." shall mean the United States of America.

## V.  OBJECTIVES

7.      It is the express purpose of the Parties in entering into this Consent Decree to require the City to take measures necessary to fulfill the objectives of the CWA, to achieve and maintain compliance with the CWA, the Massachusetts Act, any NPDES permits that may be issued, or made applicable, to the City in the future, and any applicable federal and Commonwealth regulations.

8.      All work pursuant to this Consent Decree shall be performed using sound, generally accepted engineering practices to ensure that construction, management, operation, and maintenance of the WPCF complies with the CWA, including consideration of practices to improve the resilience of the WPCF. Engineering designs and analyses required to be performed pursuant to this Consent Decree shall be conducted using sound engineering practices, and, to the extent they are applicable, that they are consistent with: (a) EPA's "Handbook: Sewer System

Infrastructure Analysis and Rehabilitation," EPA/625/6-91/030, October 1991, or as amended;

(b) EPA's "Handbook for Sewer System Evaluation and Rehabilitation," EPA/430/9-75/021,

December 1975; (c) "Existing Sewer Evaluation and Rehabilitation," WEF MOP FD-6, 2009, or

as amended; (d) "Guide to Short Term Flow Surveys of Sewer Systems," WRC Engineering

(Undated); (e) the National Association of Sewer Service Companies' "Manual of Practice"; (f)

MassDEP's "Guidelines for Performing Infiltration/Inflow Analyses and Sewer System

Evaluation Survey," revised January 1993, or as amended; (g) New England Interstate Water

Pollution Control Commission's TR-16 "Guides for the Design of Wastewater Treatment

Works," 2011, or currently effective edition; (h) EPA's "Computer Tools for Sanitary Sewer

System Capacity Analysis and Planning," EPA/600/R-07/111, October 2007, or as amended; (i)

EPA's Creating Resilient Water Utilities (CRWU) Initiative, available on the EPA-maintained

website at https://www.epa.gov/crwu; (j) EPA's Climate Resilience Evaluation and Awareness

Tool (CREAT), version 3.0, referenced at EPA 815-B-16-004, May 2016, available on the EPA-

maintained website at https://www.epa.gov/crwu/build-resilience-your-utility; and (k) the

Commonwealth's Executive Order No. 569 (Establishing an Integrated Climate Change Strategy

for the Commonwealth), dated September 16, 2016.

## VII.  REMEDIAL MEASURES

9.      Starting immediately, the City shall conduct critical preliminary work (e.g.,

conditions assessment and site investigation) for the WPCF upgrades, as provided in Appendix

A, Items 1 - 4.

10.      By January 13, 2023, the City shall select a design engineer, licensed in

Massachusetts and experienced in design of wastewater treatment facilities, for the WPCF

upgrades, as provided in Appendix A, Item 6.

11.     By May 15, 2023, the City shall submit to EPA and MassDEP an updated schedule, inclusive of the milestones required in Paragraphs 12 through 16, which includes additional interim milestone schedule dates for the preliminary design, permitting, construction phasing and funding authorizations needed to complete the WPCF upgrades, based on the City's selected project delivery method.  The updated interim schedule dates shall be submitted for EPA and MassDEP's review and approval.

12.     By December 31, 2024, the City shall submit a final design plan of the WPCF upgrades to EPA and MassDEP, as provided in Appendix A, Item 7, for MassDEP's review and approval.

13.     By May 31, 2025, the City shall complete the bidding process and award a contract(s) for the WPCF upgrades, as provided in Appendix A, Item 8.

14.     By March 31, 2028, the City shall complete construction of the WCFP upgrades, as provided in Appendix A, Item 9.

15.     By March 31, 2028, the City shall commence operation of the WPCF upgrades, as provided in Appendix A, Item 10.

16.     By June 30, 2028, the City shall meet all effluent limits in the Final Permit.

17.     Upon the Effective Date of the Consent Decree, and extending to the commencement of operations of the WPCF upgrades set forth above, the City shall comply with the Interim Effluent Limits listed in Appendix B.

## VIII.  REPORTS ON COMPLIANCE

18.     The City shall submit semi-annual reports to EPA and MassDEP summarizing its

compliance with the provisions of this Consent Decree. Progress reports shall be submitted on, or

before, July 31st and January 31st of each year. Each progress report submitted pursuant to this

paragraph shall: a) describe activities undertaken during the reporting period directed at

achieving compliance with this Consent Decree; b) identify all plans, reports, and other

deliverables required by this Consent Decree that have been completed and submitted during the

reporting period; c) describe the expected activities to be taken during the next reporting period

in order to achieve compliance with this Consent Decree; and d) identify any anticipated or

potential areas of noncompliance with this Consent Decree.

19.     The reporting requirements set forth in this Section do not relieve the City of its

obligation to submit any other reports or information as required by federal, Commonwealth, or

local law or regulation.

## IX.  APPROVAL OF SUBMISSIONS

20.     After review of any plan, report, or other item that is required to be submitted

pursuant to this Consent Decree, for approval by EPA and/or MassDEP, EPA and/or MassDEP,

as appropriate, shall in writing: a) approve the submission; b) approve the submission upon

specified conditions; c) approve part of the submission and disapprove the remainder; or d)

disapprove the submission.

21.     If the submission is approved pursuant to Paragraph 20(a) the City shall take all

actions required by the plan, report, or other document, in accordance with the schedules and

requirements of the plan, report, or other document, as approved. If the submission is

conditionally approved or approved only in part, pursuant to Paragraph 20(b) or (c), the City

shall, upon written direction from EPA, after consultation with MassDEP, take all actions

required by the approved plan, report, or other item that EPA determines, after consultation with MassDEP, are technically severable from any disapproved portions, subject to the City's right to dispute only the specified conditions or the disapproved portions, under Section XII (Dispute Resolution).

22.     If the submission is disapproved in whole or in part pursuant to Paragraph 20(c) or (d), the City shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies identified in writing by EPA (after consultation with MassDEP), and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, the City shall proceed in accordance with the preceding Paragraph.

23.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA (after consultation with MassDEP) may again require the City to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to the City's right to invoke Dispute Resolution and the right of EPA and/or the Commonwealth to seek stipulated penalties.

24.     Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree, shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part, provided that, if the original submission was so deficient as to constitute a material breach of the City's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

X.  STIPULATED PENALTIES

25.     The City shall pay stipulated penalties to the United States and/or the

Commonwealth for violations or noncompliance with the requirements of this Consent Decree,

as set forth below, unless excused under Section XI (Force Majeure). A violation or

noncompliance includes failing to perform an obligation required by the terms of this Consent

Decree, including any work plan or schedule approved under this Decree, according to all

applicable requirements of this Consent Decree and within the specified time schedules or by the

date(s) established by or approved under this Decree.

        a.     Reporting Requirements.  For every Day that the City fails timely to

submit a report required by Paragraph 20 of this Consent Decree or fails to provide the

certification required by Paragraph 49, the City shall pay a stipulated penalty as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 750 | 1st through 10th Day |
| $ 1,500 | 11th through 20th Day |
| $ 2,500 | 21st Day and beyond. |

        b.     Remedial Measures.  For every Day that the City fails to timely meet the

requirements of Section VII (Remedial Measures) of this Consent Decree, including but not

limited to, submitting an approvable plan, schedule, report, or other item, other than a report

required by Paragraph 20, fails to implement remedial requirements in a plan, schedule, report,

or other item Approved by EPA, or fails to meet the Interim Effluent Limits set forth in

Appendix B, the City shall pay a stipulated penalty as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 750 | 1st through 10th Day |

| | |
|---|---|
| $ 1,000 | 11th through 20th Day |
| $ 2,500 | 21st Day and beyond. |

        c.      <u>Transfer of Facility</u>.  If the City fails to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States at least 30 Days prior to any transfer of any portion of the Facility; or (c) provide a copy of the proposed written agreement with the transferee as required by Paragraph 4, Defendant shall pay a stipulated penalty of $10,000 per occurrence.

      26.    Stipulated penalties shall automatically begin to accrue on the Day after performance is due or on the Day a violation occurs and shall continue to accrue each Day until performance is satisfactorily completed or until the violation or noncompliance ceases. Stipulated penalties shall accrue simultaneously for separate violations of or instances of noncompliance with this Consent Decree.

      27.    Unless it has elected to pursue dispute resolution detailed in Section XII (Dispute Resolution), below, the City shall pay stipulated penalties as specified in this Section by delivering the payments to the United States and the Commonwealth within 30 Days of the date of a written demand for payment of stipulated penalties in accordance with the instructions set forth below:

        a.      The City shall pay stipulated penalties to the United States and Commonwealth, in equal parts, in the manner set forth in subparagraphs b. and c. below and state that the payment is for stipulated penalties and shall state for which violation(s) or noncompliance the penalties are being paid.

        b.      The City shall make one-half of any stipulated payment to the United States by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice

in accordance with written instructions to be provided to the City, following lodging of the

Consent Decree, by the United States Attorney's Office for the District of Massachusetts,

Financial Litigation Unit, Boston, Massachusetts. The costs of such electronic funds transfer

shall be the responsibility of the City.  At the time of payment, the City shall send a copy of the

EFT authorization form, the EFT transaction record, and a transmittal letter, which shall state

that the payment is for the Stipulated Penalty owed pursuant to the Consent Decree in *United*

*States and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts*, and shall

reference the civil action number and DOJ case number 90-5-1-1-12666, to EPA and the United

States Department of Justice as specified in Paragraph 48, by email to

acctsreceivable.CINWD@epa.gov, and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

> c.       The City shall also make one-half of any stipulated payment to the

Commonwealth by by Electronic Funds Transfer ("EFT") to the Commonwealth in accordance

with current EFT procedures, using the following account information:

> Commonwealth of Massachusetts, Office of Attorney General
> ABA#: 011075150
> ACCOUNT#: 00088882022
> SANTANDER BANK
> 75 STATE STREET
> BOSTON, MA 02109
> TIN: 046002284

and shall include the following in the payment information: "EPD, Commonwealth v. City of

Gloucester." Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will

be credited on the next business day. At the time of payment, Gloucester shall send notice, by

electronic mail, that such payment has been made to the Commonwealth to I. Andrew Goldberg, Environmental Protection Division at andy.goldberg@mass.gov and shall include all of the payment information stated in this Paragraph in addition to the amount of the payment.

     d.    In the event the City fails to pay stipulated penalties according to the terms of this Consent Decree, such penalty (or portion thereof) shall be subject to interest at the statutory judgment rate set forth at 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or Commonwealth from seeking any remedy otherwise provided by law for failure of the City to pay any stipulated penalties.

28.    Stipulated penalties shall continue to accrue as provided in Paragraph 26, during any dispute resolution, but need not be paid unless and until the following:

     a.    If the dispute is resolved by agreement or a decision of EPA, after consultation with MassDEP, that is not appealed to the Court, the City shall pay accrued penalties determined to be owed, together with interest, to the United States and Commonwealth within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

     b.    If the dispute is appealed to the Court and the United States and/or the Commonwealth prevails in whole or in part, the City shall pay all accrued penalties determined to be owed, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

     c.    If any Party appeals the District Court's decision, the City shall pay all accrued penalties determined to be owed, together with interest, within 15 Days of receiving the final appellate court decision if that decision confirms that a penalty is due.

19

29.     Stipulated penalties are not the United States' or Commonwealth's exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XV (Effect of Settlement/Reservation of Rights), the United States and Commonwealth expressly reserve the right to seek any other relief it deems appropriate for the City's violation of this Consent Decree or applicable law, including but not limited to an action against the City for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. The amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI.  FORCE MAJEURE

30.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the City or of any entity controlled by the City, including its consultants, contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Consent Decree notwithstanding the City's best efforts to fulfill the obligation. The requirement that the City exercise "best efforts" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include the City's financial inability to perform any obligation under this Consent Decree. Stipulated Penalties shall not be due for the number of Days of noncompliance caused by a Force Majeure event as defined in this Section, provided that the City complies with the terms of this Section.

31.     If any event occurs which may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, the City shall notify

EPA and MassDEP within 72 hours after the City first knew or should have known that the event might cause a delay. Within five (5) working Days thereafter, the City shall submit for Approval by EPA and MassDEP, at the addresses specified in Section XIV (Form of Notice), a written explanation of the cause(s) of any actual or expected delay or noncompliance, the anticipated duration of any delay, the measure(s) taken and to be taken by the City to prevent or minimize the delay, a proposed schedule for the implementation of such measures, and a statement as to whether, in the opinion of the City, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  Notwithstanding the foregoing, the City shall notify EPA and MassDEP orally within 24 hours of becoming aware of any event that presents an imminent threat to the public health or welfare or the environment and provide written notice to EPA within 72 hours of discovery of such event. The City shall be deemed to know of any circumstances of which the City or any entity controlled by the City, including its consultants, contractors, and subcontractors, knew or should have known.  Failure to provide timely and complete notice in accordance with this Paragraph shall constitute a waiver of any claim of Force Majeure with respect to the event in question.

32.     If EPA, after consultation with MassDEP, agrees that a delay or anticipated delay is attributable to Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event shall be extended by EPA for a period of time as may be necessary to allow performance of such obligations. EPA will notify the City in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

33.     If EPA, after consultation with MassDEP, does not agree the delay or anticipated delay is attributable to Force Majeure, or on the number of Days of noncompliance caused by such event, EPA will notify the City in writing of its decision. The City may then elect to initiate the dispute resolution process set forth in Section XII (Dispute Resolution). In any dispute resolution proceeding in which the City asserts Force Majeure, the City shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, and that "best efforts" were exercised to avoid and mitigate the effects of the delay, and that the City complied with the requirements of Paragraphs 30 and 31, above. If the City carries this burden, the delay at issue shall be deemed not to be a violation by the City of the affected obligation(s) of this Consent Decree identified to EPA and the Court.

34.     Delay in performance of any obligation under this Consent Decree shall not automatically justify or excuse delay in complying with any subsequent obligation or requirement of this Decree.

35.     Failure of the City to obtain any Commonwealth or federal grants or loans shall not be considered a Force Majeure event under this Consent Decree.

## XII.  DISPUTE RESOLUTION

36.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures set forth in this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such

undisputed issue as a defense to an action by the United States to enforce any obligation of the City arising under this Decree. The procedures set forth in this Section shall not apply to actions by the United States to enforce obligations that the City has not disputed in accordance with this Section.

37.     <u>Informal Dispute Resolution</u>.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends the United States and/or the Commonwealth a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute and shall be sent within 21 Days after receipt of a notice of disapproval, correction of deficiencies, or approval upon specified conditions, a Force Majeure determination by EPA under Section XI (Force Majeure), or a written demand for payment of stipulated penalties. If the City fails to give such notice, it shall be deemed to have waived any right to invoke dispute resolution regarding such dispute, and the position advanced by the United States and/or the Commonwealth shall be considered binding. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement between the Parties.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and/or the Commonwealth shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, the City invokes formal dispute resolution procedures as set forth below.

38.     <u>Formal Dispute Resolution</u>. The City shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and/or the Commonwealth a written Statement of Position regarding the matter in dispute.

The City's Statement of Position shall include, but need not be limited to, any factual data,

analysis, or opinion supporting the City's position and any supporting documentation relied upon

by the City.

39.     The United States and/or the Commonwealth shall serve its Statement of Position

within 45 Days of receipt of the City's Statement of Position. The United States' and/or the

Commonwealth's Statement of Position shall include, but need not be limited to, any factual

data, analysis, or opinion supporting that position and any supporting documentation relied upon

by the United States. The Director of the Enforcement and Compliance Assurance Division, EPA

Region 1, or their designee, will issue a final decision resolving the matter in dispute. The

decision of the Director of the Enforcement and Compliance Assurance Division, EPA Region 1,

shall be binding on the City, subject only to the right to seek judicial review, in accordance with

the following Paragraph. EPA shall maintain an administrative record of the dispute, which shall

contain all statements of the Parties, including supporting documentation, submitted pursuant to

this Section, and the decision of the Director of the Enforcement and Compliance Assurance

Division, EPA Region 1.

40.     The City may seek judicial review of the dispute by filing with the Court and

serving on the United States, in accordance with Section XIV (Form of Notice), a motion

requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt

of EPA's decision pursuant to the preceding Paragraph. The motion shall contain a written

statement of the City's position on the matter in dispute, including any supporting factual data,

analysis, opinion, or documentation, and shall set forth the relief requested and any schedule

within which the dispute must be resolved for orderly implementation of the Consent Decree.

24

41.     The United States and/or the Commonwealth shall respond to the City's motion within the time period allowed by the Federal Rules of Civil Procedure and the Local Rules of this Court. The City may file a reply memorandum, to the extent permitted by the Federal Rules of Civil Procedure and the Local Rules.

42.     Standard of Review.

a.      Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring Approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of law, the City shall have the burden of demonstrating, based upon the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section, the City shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers its objectives.

43.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 30. If the

City does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

XIII.  RIGHT OF ENTRY/INFORMATION COLLECTION AND RETENTION

44.     EPA and/or the Commonwealth, and their contractors, consultants, and attorneys shall have authority to enter any property and/or facility owned and/or controlled by the City, at all reasonable times, upon proper identification, for the purposes of: (a) monitoring the progress of activity required by this Consent Decree; (b) verifying any data or information submitted to EPA under this Consent Decree; (c) assessing the City's compliance with this Consent Decree; (d) obtaining samples and, upon request, splits of any samples taken by the City or its representatives, contractors, or consultants; and (e) obtaining documentary evidence, including photographs and similar data.  Upon request, EPA and/or the Commonwealth shall provide the City splits of any samples taken by it/them. This requirement is in addition to, and does not limit, the authority of EPA and/or the Commonwealth pursuant to the CWA or any other provision of federal or Commonwealth law or regulation.

45.     Until five years after the termination of this Consent Decree, the City shall retain all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) generated by the City, and all data collected and all reports generated by the City's agents (including data and reports in electronic form), that relate in any manner to the City's performance of its obligations under this Consent Decree. This information retention requirement shall apply regardless of any contrary municipal or institutional policies or procedures. At any time during this information-retention period, upon

26

request by the United States and/or the Commonwealth, the City shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

46.     At the conclusion of the information-retention period provided in the preceding Paragraph, the City shall notify the United States and the Commonwealth at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States and or the Commonwealth, the City shall deliver any such documents, records, or other information to it/them. The City may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the City asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the City. However, no documents, records, data, reports or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

47.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the Commonwealth pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of the City to maintain documents, records, or other information imposed by applicable federal laws, regulations, or permits.

## XIV.  FORM OF NOTICE

48.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing to the

following respective addresses. Any Party may, by written notice to the other Parties, change its

designated notice recipient, address, or means of notice (including the substitution of electronic

notice via email instead of notice via mail). Notices submitted pursuant to this Section shall be

deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by written

agreement of the Parties.

<u>As to the U.S. Department of Justice</u>

Chief, Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611 - Ben Franklin Station
Washington, DC  20044
DJ # 90-5-1-1-12666

<u>As to the United States Attorney</u>

Annapurna Balakrishna
Assistant U.S. Attorney
John Joseph Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3103
Annapurna.Balakrishna@usdoj.gov

<u>As to EPA</u>

Rachel Olugbemi
Physical Scientist, Water Compliance section
U.S. Environmental Protection Agency, Region 1
5 Post Office Square – Suite 100
Mail Code OES04-4
Boston, MA  02109-3912
Olugbemi.rachel@epa.gov

Jeff Kopf
Senior Enforcement Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square – Suite 100
Mail Code OES04-4
Boston, MA  02109-3912
Kopf.jeff@epa.gov

The City shall provide all submissions and notices required to be submitted to EPA (including

report appendices) via electronic mail no later than the close of business on the due date(s)

specified in this Consent Decree, in addition to providing a hard copy in accordance with the

terms of this Paragraph. The City shall provide complete copies to both Rachel Olugbemi and

Jeff Kopf of all other submissions and notices required to be made by the City to EPA pursuant

to this Decree; except that with respect to copies of reports, schedules, plans, and other items

required to be submitted to Jeff Kopf pursuant to Sections VII (Remedial Measures) and VIII

(Reports on Compliance), only copies of the transmittal letters need be provided.

<u>As to the City of Gloucester, Massachusetts</u>

Office of the Mayor
City of Gloucester
City of Gloucester City Hall
9 Dale Avenue
Gloucester, MA 01930

Suzanne Egan, General Counsel
City of Gloucester City Hall
9 Dale Avenue
Gloucester, MA 01930
segan@gloucester-ma.gov

Environmental Engineer
City of Gloucester - Department of Public Works
Water Compliance Office
50 Essex Avenue, Gloucester, MA 01930

The City shall make an electronic copy of each submission that has been Approved by EPA in accordance with this Consent Decree, including Compliance Reports, available on a publicly accessible website. The City shall provide complete copies to MassDEP and to the Attorney General of the Commonwealth all submissions and notices required to be submitted to EPA pursuant to this Consent Decree:

As to MassDEP

Joseph Nerden
Environmental Engineer IV
Municipal Services
Water Pollution Control
Wastewater Management
Massachusetts Department of Environmental Protection Northeast Regional Office
205B Lowell Street
Wilmington, MA 01887
Joseph.Nerden@mass.gov

and

Heidi Zisch
Chief Regional Counsel
Massachusetts Department of Environmental Protection
Office of General Counsel
Northeast Regional Office
205B Lowell Street
Wilmington, MA 01887
Heidi.Zisch@ mass.gov

and

As to the Attorney General of the Commonwealth

I. Andrew Goldberg
Assistant Attorney General
Environmental Protection Division
One Ashburton Place, 18th Floor
Boston, MA 02108
andy.goldberg@mass.gov

49.     All written reports and other submissions required of the City by this Consent

Decree shall contain the following certification by a duly authorized representative of the City:

> "I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system designed
> to assure that qualified personnel properly gather and evaluate the information
> submitted.  Based on my inquiry of the person or persons who manage the system,
> or those persons directly responsible for gathering the information, the
> information submitted is, to the best of my knowledge and belief, true, accurate,
> and complete.  I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations."

## XV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

50.     This Consent Decree resolves the civil claims of the United States and the

Commonwealth for the violations alleged in the Complaints filed in this action through the Date

of Lodging.

51.     This Consent Decree is neither a permit nor a modification of any existing permit

under any federal, Commonwealth, or local law or regulation. The City is responsible for

achieving and maintaining complete compliance with all applicable federal, Commonwealth, and

local laws and regulations, and permits, and the City's compliance with this Consent Decree

shall be no defense to any action commenced pursuant to any such laws, regulations, or permits,

except as set forth herein. The United States and the Commonwealth do not, by their consent to

the entry of this Consent Decree, warrant or aver in any manner that the City's compliance with

any aspect of this Consent Decree will result in compliance with provisions of the CWA or with

any other provisions of federal, Commonwealth, or local laws, regulations or permits. This

Consent Decree shall not be construed to constitute EPA or MassDEP approval of any equipment

or technology installed by the City under the terms of this Consent Decree.

31

52.     This Consent Decree does not limit any rights or remedies available to the United States or the Commonwealth for any violation by the City of the CWA or associated regulations or permit conditions other than those claims alleged in the Complaints through the Date of Lodging. This Consent Decree does not limit any rights or remedies available to the United States or the Commonwealth for any criminal violations. The United States and the Commonwealth reserve all rights and remedies, legal and equitable, available to enforce the provisions of this Consent Decree. Nothing herein shall be construed to limit the power of the United States or the Commonwealth, consistent with their authorities, to undertake any action against any person, in response to conditions which may present an imminent and substantial endangerment to the public's health or welfare, or the environment.

53.     In any subsequent administrative or judicial proceeding initiated by the United States and/or the Commonwealth for injunctive relief, civil penalties, or other appropriate relief relating to the WPCF or the City's violations of federal or Commonwealth law, the City shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the Commonwealth in the subsequent proceeding were or should have been brought in the instant case, except with respect to the claims identified in the Complaint filed in this action through the Date of Lodging.

54.     This Consent Decree does not limit or affect the rights of the Parties against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the City, except as otherwise provided by law.

32

55.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XVI.  COSTS

56.     Each Party shall bear its own expenses, costs and attorney's fees in this action. The City shall be responsible for all expenses, costs and attorney's fees incurred by the United States and/or the Commonwealth in collecting any penalties due and payable under Section X (Stipulated Penalties) of this Consent Decree.

## XVII.  EFFECTIVE DATE

57.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that the City hereby agrees, that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States and/or the Commonwealth withdraws or withholds consent to this Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII.  RETENTION OF JURISDICTION

58.     The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree and to assess any stipulated penalties that may have accrued because of the City's failure to comply with any of its obligations under this Decree.

XIX.  MODIFICATION

59.     The terms of this Consent Decree, including any attached appendices and any schedule specified in or Approved by EPA and/or the Commonwealth pursuant to the Consent Decree, may be modified only by a subsequent written agreement signed by all the Parties, except that, without otherwise altering the obligations of the Consent Decree, (a) the Parties may by written agreement modify the schedules specified in this Decree (including non-material modifications such as changes to the schedules in paragraphs 12-15 of this Consent Decree), and (b) EPA and/or the Commonwealth may approve submissions upon specified conditions or modify submissions. The City's request for a modification may be based on, among other things, a current Financial Capability Assessment (per EPA's Financial Capability Assessment Framework, issued on November 24, 2014, as modified). Any material modification to the terms of this Consent Decree, including but not limited to an extension of the final June 30, 2028, compliance date, shall be effective only upon approval of the Court. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burdens of proof provided by Paragraph 42, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

XX.  FUNDING

60.     Performance of the terms of this Consent Decree by the City is not conditioned on the receipt of any federal or Commonwealth grant funds or loans. In addition, performance is not excused by the lack of federal or Commonwealth grant funds or loans.

34

## XXI.  SEVERABILITY

61.     The provisions of this Consent Decree shall be severable, and should any provision be declared by a court of competent jurisdiction to be unenforceable, the remaining provisions shall remain in full force and effect.

## XXII.  TERMINATION

62.     After the City completes all of the requirements of Section VII (Remedial Measures) and Section VIII (Reports on Compliance), complies with all other requirements of the Consent Decree, pays all accrued stipulated penalties, and all accrued interest thereon, as required by Section X (Stipulated Penalties) of this Consent Decree, the City may serve upon the United States and the Commonwealth a Request for Termination, stating that the City has satisfied those requirements, together with all applicable supporting documentation.

63.     Following receipt by the United States and the Commonwealth of the City's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the City has satisfied the requirements for termination of this Consent Decree.  If the United States and the Commonwealth agree that this Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

64.     If the United States and/or the Commonwealth does/do not agree that the Decree may be terminated, the City may invoke dispute resolution under Section XII (Dispute Resolution). However, the City shall not seek dispute resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

35

## XXIII.  FINAL JUDGMENT

65.     Entry of this Consent Decree constitutes Final Judgment under Rule 54 of the Federal Rules of Civil Procedure.

## XXIV.  WAIVER OF SERVICE OF SUMMONS AND COMPLAINT

66.     The City hereby agrees to accept service of process by mail, delivered in accordance with the notice provisions of this Consent Decree, of the summons and accompanying Complaint in this action and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court related to such service.

## XXV.  PUBLIC COMMENT

67.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments received disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper or inadequate and the Commonwealth reserves the right to withdraw or withhold consent if the United States withdraws or withholds consent and/or comments received disclose facts or considerations which indicate that this Consent Decree is inconsistent with state law.  The City consents to the entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Decree, unless the United States and/or the Commonwealth has notified the City in writing that it no longer supports entry of this Decree.

## XXVI.  SIGNATORIES

68.     Each undersigned representative certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

## XXVII.  INTEGRATION

69.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

70.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than submissions that are subsequently submitted and Approved by EPA pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXVIII.  APPENDICES

71.     The following appendices are attached to and part of this Consent Decree:

a.     "Appendix A" is the City of Gloucester, Massachusetts, Gloucester WPCF Improvements, Program Schedule (October 2022)

b.     "Appendix B" is a Table showing interim effluent limits.

Judgment is hereby entered in accordance with the foregoing Consent Decree this

___12th___ day of ___May_____, 2023.


       /s/ Leo T. Sorokin
       UNITED STATES DISTRICT JUDGE
       District of Massachusetts

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts

For Plaintiff UNITED STATES OF AMERICA

RACHAEL ROLLINS
United States Attorney
District of Massachusetts

ANNAPURNA BALAKRISHNA
Digitally signed by ANNAPURNA BALAKRISHNA
Date: 2023.03.06 12:36:21 -05'00'

_____          _____
Annapurna Balakrishna                                     Date
Assistant U.S. Attorney
John Joseph Moakley Courthouse
One Courthouse Way
Suite 9200
Boston, Massachusetts 02210
(617) 748-3103
Annapurna.Balakrishna@usdoj.gov


TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

HENRY FRIEDMAN
Digitally signed by HENRY FRIEDMAN
Date: 2023.01.06 12:30:06 -05'00'

_____          _____
Henry Friedman                                           Date
Assistant Chief
Environmental Enforcement Section
Environment and Natural Resources
Division 601 D. Street, N.W.
Washington, DC 20044
(202) 514-5268

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

DIANA SAENZ Digitally signed by DIANA SAENZ
Date: 2022.12.14 12:46:48 -05'00'

Diana Saenz                                    Date
Acting Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

12/8/2022.
Date

Chrisna Baptista
Attorney
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

40

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

December 5, 2022
Date

Carl Dierker
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square, Suite 100
Boston, Massachusetts 02109-3912

Dec. 8, 2022
Date

Jeff Kopf
Senior Enforcement Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square, Suite 100
Boston, Massachusetts 02109-3912

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts

For the Plaintiff-Intervenor COMMONWEALTH OF MASSACHUSETTS:

ANDREA JOY CAMPBELL
Attorney General


I. ANDREW GOLDBERG (BBO #560843)          2/7/2023
Assistant Attorney General                Date
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-727-2200
andy.goldberg@mass.gov

42

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America and Commonwealth of Massachusetts v. City of Gloucester, Massachusetts

For Defendant CITY OF GLOUCESTER

_____          12/2/2022
Gregory P. Verga, Mayor                    Date
City of Gloucester
9 Dale Avenue
Gloucester, MA 01930
gverga@gloucester-ma.gov


_____          12/2/2022
Suzanne Egan, General Counsel              Date
City of Gloucester
9 Dale Avenue
Gloucester, MA 01930
978-281-9727
segan@gloucester-ma.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     and<br><br>COMMONWEALTH OF<br>MASSACHUSETTS,<br><br>          Plaintiff-Intervenor,<br><br><br>          v.<br><br><br>CITY OF GLOUCESTER,<br>MASSACHUSETTS,<br><br><br>               Defendant. | CIVIL ACTION NO. 1:23-10505-LTS |

## <u>ADDENDUM 1 TO CONSENT DECREE</u>

This Addendum to the Consent Decree changes the date for the expiration of interim limits in Appendix B of the Consent Decree from "June 31, 2028" to "July 1, 2028." All Parties to the Consent Decree have been notified of this change and agree to it. The signed Consent Decree is otherwise enforced as written.

- 1 -

Appendix A

| Task | Duration | Start | Finish |
|---|---|---|---|
| ...on of Probable Construction Cost | 13 wks | Mon 8/1/22 | Mon 10/31/22 |
| ...al Design Report | 13 wks | Mon 8/1/22 | Mon 10/31/22 |
| | 79 mons | Fri 7/1/22 | Sun 12/31/28 |
| | 6 mons | Mon 8/15/22 | Tue 1/31/23 |
| | **23 mons** | **Tue 1/31/23** | **Tue 12/31/24** |
| ...ubmission | 1 day | Mon 5/15/23 | Mon 5/15/23 |
| | 6 mons | Sun 12/1/24 | Sat 5/31/25 |
| | 34 mons | Sun 6/1/25 | Fri 3/31/28 |
| | 3 mons | Sat 4/1/28 | Fri 6/30/28 |

City of Gloucester, Massachusetts
Gloucester WPCF Improvements

Task

Appendix B

**Appendix B**

The following interim effluent limits listed below shall apply to discharges from outfall 001 of the City of Gloucester's POTW:

| Effluent Characteristic | Effluent Limitation | | | Monitoring Requirements | |
|---|---|---|---|---|---|
| | Monthly average | Weekly average | Daily maximum | Measurement Frequency | Sample Type[1] |
| BOD$_5$ | 10520 lbs/day 245 mg/L | Report lbs/day Report mg/L | 367 mg/L | 3/week | Composite |
| BOD$_5$ Percent Removal | Report | | | 1/month | Calculation |
| TSS | 6010 lbs/day 140 mg/L | Report lbs/day Report mg/L | 210 mg/L | 3/week | Composite |
| TSS Percent Removal | Report | | | 1/month | Calculation |
| Fecal Coliform[2] | 200 | | 400 | 3/week | Grab |
| Enterococci Bacteria[2] | Report | | Report | 3/week | Grab |
| Oil and Grease[3] | | | 25 | 1/week | Grab |

1.     These interim limits shall expire on June 31, 2028, upon completion of all actions implemented pursuant to Part VII of the Consent Decree (REMEDIAL MEASURES), upon issuance of a new Permit to the City, upon termination of this Consent Decree, or upon alternative interim limits provided by EPA to the City in writing, whichever occurs soonest.

2.     The City shall comply with all other effluent limitations, monitoring requirements, and other conditions specified in the Permit for the parameters not addressed above.

---

[1]     A "grab" sample is an individual sample collected in a period of less than 15 minutes. A "composite" sample is a composite of at least twenty-four (24) grab samples taken during one consecutive 24-hour period, either collected at equal intervals and combined proportional to flow or continuously collected proportional to flow.

[2]     Enterococci samples shall be taken concurrently with fecal coliform samples. Each bacterium sampling event will also be conducted concurrent with a required total residual chlorine sample. The monthly average limit for fecal coliform and enterococci are expressed as geometric means.

[3]     Both total petroleum hydrocarbons (TPH) and oil and grease shall be tested using EPA Method 1664- n-Hexane Extractable Material (HEM; Oil and Grease) and Silica Gel Treated n-Hexane Extractable Material (SGT-HEM; Non-polar Material) by Extraction and Gravimetry Revision A or Method 1664 Revision B.